# Black Street.

*Road law—Ordinance—Repeal of ordinance—Opening street.*

1. An ordinance of a city of the second class repealing an ordinance authorizing the opening of a street, is not invalid because it was passed both by the common and select council on the same day, if it appears that it was introduced on a prior day and signed by the mayor on a subsequent day. The repealing ordinance does not violate in these respects either the Act of May 23, 1874, P. L. 230, or the Act of March 7, 1901, P. L. 20.

2. Such an ordinance is not invalid because it was not signed by the presidents of the two branches of council, and by the clerk of the common council under the special acts relating to the city of Pittsburgh of April 6, 1867, P. L. 846 and April 1, 1868, P. L. 565, inasmuch as the Act of March 7, 1901, P. L. 20, relating to the government of cities of the second class, repealed the special acts. If an engrossed copy of the ordinance was certified by the clerk of the select council and transmitted to the mayor, everything was done that was necessary.

3. An ordinance repealing an ordinance authorizing the opening of a street is not a proceeding to vacate the street.

4. A city will not be presumed to have entered upon and opened a merely located street, because in the improvement, grading, curbing and paving of streets which crossed the line of the located street turnouts were made, if it appears that none of such turnouts went beyond the line of the cross street which was being improved.

Argued Oct. 17, 1911. Appeal No. 56, Oct. T., 1911, by Henry H. Negley and Robert B. Petty, executors of the last will of Catherine R. Negley, from order of C. P. No. 3, Allegheny Co., Feb. T., 1909, No. 637, dismissing petition to set aside order quashing proceedings before Road Viewers in re Black street in the city of Pittsburgh. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Petition to vacate order quashing proceedings before a jury of view.

The court filed the following opinion:

The city of Pittsburgh, by ordinance approved July 13th, 1908, authorized and directed the opening of Black street. Viewers were appointed at the above number and term to ascertain the damages and assess benefits by reason of said opening. The viewers' report was filed April 1, 1910, and confirmed nisi.

An ordinance to repeal the ordinance opening Black street was introduced in common council February 14, 1910, and was referred to the public works committee, which committee was a joint committee of common and select council; and the ordinance was considered by the said committee on April 8, 1910, and ordered returned to council with an affirmative recommendation. The ordinance was reported to common council on April 11, 1910, and was passed finally by said council on same day. On the same day it was transmitted to select council and passed finally by select council the same day, a majority of all the members of each branch of councils voting in favor of the ordinance. A copy of the ordinance was transmitted to the mayor and, on April 15, 1910, he approved the same.

On April 28, 1910, the petition of the city of Pittsburgh, by Joseph G. Armstrong, director of the department of public works, was presented to this court, setting forth the fact of the passage of the ordinance repealing the ordinance for the opening of Black street, and praying that the viewers' report and the proceedings at the above number and term, be and the same are hereby quashed, and that the costs of this proceeding be paid by the city of Pittsburgh.

On July 20, 1910, Henry H. Negley and Robert B. Petty, executors of the last will of Catherine R. Negley, presented their petition to court, praying that the court set aside the order of April 28, 1910, quashing the proceedings before the board of viewers, and reinstate said report, that the same may be proceeded in according to law. A rule was granted on the city of Pittsburgh to

show cause why the prayer of the petition should not be granted; and the cause comes before the court on the return of that rule.

In support of that rule, the petitioners allege that the ordinance purporting to repeal the ordinance opening Black street was void for the following reasons:

That the ordinance was passed in select council on the same day it was introduced.

That the ordinance was not signed by the presidents of councils or the clerk of common council.

That the ordinance was not properly certified or signed by the mayor.

That the ordinance was not passed on petition of property owners, or by the three-fourths vote of councils, and was not advertised as required by the Act of May 22, 1895, P. L. 106, amended by the Act of March 19, 1903, P. L. 35.

And, that the ordinance is not effective because the property of the estate of Catherine R. Negley has been entered upon by the city and Black street has been treated as a public highway by the city.

The acts of assembly governing the passage of ordinances by council are, the general Act of May 23, 1874, P. L. 230, which provides, in Section 4: "Every bill shall be read at length in each branch; no bill shall become a law upon the same day on which it was introduced or reported"; and the Act of March 7, 1901, P. L. 20, for the government of second class cities, Section 4, "No ordinance or resolution shall be passed finally on the day of its introduction, except in case of public emergency, and then only when requested by the city recorder and approved by the affirmative votes of all the members of councils."

As to the provisions of the Act of 1874, this bill did not become a law on the day it was introduced or reported. It did not become a law until signed by the mayor which was two months after it was introduced in council, and four days after it was reported out of

committee.   The provision of the Act of 1901 does not
affect this ordinance, because it was not passed finally
on the day of its introduction.   It was introduced into
councils, February 14, and was not passed finally until
April 11th.   It is true, it was passed finally the day it
was transmitted from common to select council; but
the act of assembly only prohibits the passage of the
ordinance finally on the day of its introduction.   The
difference between the Act of 1901, governing second
class cities, and the act governing third class cities, is
significant.   The latter act provides "no bill shall be
passed finally in either branch upon the same day upon
which it was introduced or reported."   The legislature
provided a difference, and a very significant difference,
in the acts governing the two different classes of cities.

It appears that, after the final passage of this ordi-
nance by select council, a copy of the ordinance was
made, which was signed by the clerk of select council
and transmitted to the mayor for his approval.   It is
objected by the counsel for petitioners, that the ordi-
nance is void, because it is not signed by the presidents
of council, nor by the clerk of. common council; and
the Act of April 6, 1867, P. L. 846, and the Act of
April 1, 1868, P. L. 565, are cited in support of this
contention.

These last two acts are special acts, relating to the
city of Pittsburgh.   The Act of March 7, 1901, P. L.
20, is an act for the government of second class cities,
and provides a complete system of government for those
cities; and, in our opinion, repeals the special acts for
the city of Pittsburgh which are inconsistent with it.
But, even if the acts of 1867 and 1868 are in force, the
acts of the presiding officers are purely ministerial.   The
requirement that they shall sign the ordinances was
not essential to the validity of the ordinance.   The Act
of June 20, 1901, P. L. 586, relating to cities of the sec-
ond class, provides:   "Every ordinance or resolution
shall, before it takes effect, be presented, duly engrossed,

and certified, to the city recorder, for his approval. The city recorder shall sign if he approves." The city recorder is now the mayor of the city of Pittsburgh. This was done in this case. To engross an ordinance means to make a copy of it. A copy of this ordinance was made and certified by the clerk of select council and transmitted to the mayor. It is not intended that the original paper which was introduced, with all its amendments and interlineations, should be sent in that condition to the mayor for his approval; but that the ordinance, as finally passed, should be engrossed and sent to the mayor. That was done in this case, and the mayor approved it. There is no requirement in the Act of 1901, or in the Act of January 7, 1874, P. L. 477, that the clerks of both branches shall sign the ordinance; but that the ordinance shall be properly certified. And the one to certify that ordinance is the clerk of that branch which passed the ordinance finally.

It is further contended by counsel for the petitioners that this is, in effect, a vacation ordinance, and that councils had no jurisdiction to pass this vacation ordinance, except on the petition of property owners, or by three-fourths vote of councils after advertisement as required by the Act of 1895, amended by the Act of March 19, 1903, P. L. 35.

The ordinance purporting to repeal the ordinance opening Black street was passed by virtue of Section 7 of the Act of May 16, 1891, P. L. 75. That section provides as follows:

"In case any such municipal corporation shall repeal any ordinance passed, or discontinue any proceeding taken, providing for any of the improvements mentioned in the preceding sections prior to the entry upon, taking, appropriation or injury to any property or materials, and within thirty days after the filing of the report of viewers assessing damages and benefits, the said municipality shall not thereafter be liable to pay any damages which have been, or might have been, assessed,

but all costs upon any proceedings had thereon shall be paid by said municipal corporation, together with any actual damage, loss or injury sustained by reason of such proceedings."

It seems to us that the contention that the repeal of the ordinance opening Black street was a proceeding to vacate Black street cannot be sustained. The repeal of the ordinance opening Black street is to annul all proceedings had by virtue of that ordinance. It restores the parties to the same position which they occupied before the ordinance for the opening of Black street was passed. It is an annulment of the proceedings to open Black street. The vacation of a street affirms all the proceedings for the establishment of that street. It accepts the street as a public highway, and begins proceedings to vacate.

The legislature has provided a system for the vacation of streets. If it had intended that this proceeding should be a vacation, it would have called it a vacation, and provided for the proceedings, as in case of other vacations. It is evidently intended that, if the city discovers that it is not good policy to proceed with the improvements undertaken, before the final confirmation of the viewers' report, it may repeal the ordinance or discontinue the proceedings taken, without liability to pay any damages which have been assessed. It will be observed that the ordinance must be repealed, or the proceedings discontinued, within thirty days after the filing of the report of the viewers. That means, before final confirmation of the viewers' report. There is no restriction on the jurisdiction of council to take these proceedings only on the petition of abutting property owners. At the time of the passage of this act, the act empowering councils to pass ordinances for improvements and for vacation of streets by a three-fourths vote, was not the law.

The last contention of petitioners is a question of fact.

*Error assigned* was order dismissing the petition.

*George B. Gordon,* with him *R. B. Petty & Sons,* for appellants.—The city has taken appellants' property as effectually as though Black street was fully paved and to deny appellants' right to damages is to nullify the constitutional provision that private property shall not be taken, injured or destroyed without compensation: District of Pittsburgh, 2 W. & S. 320; Bush v. McKeesport, 166 Pa. 57; Wood v. State Hospital, 164 Pa. 159; Franklin street, 14 Pa. Superior Ct. 403; Hammett v. Phila., 65 Pa. 153.

The so-called repealing ordinance was passed by select council the same day it was introduced therein and is therefore contrary to law and void, and was passed by both branches of council on the same day it was reported from committee and is therefore contrary to law and void: Altoona v. Bowman, 171 Pa. 307; Penna. R. R. Co. v. Pittsburgh, 221 Pa. 90.

The said repealing ordinance was not passed on petition of property owners nor by a three-fourths vote of councils and was not advertised as required by the act of 1895, amended by the Act of March 19, 1903, P. L. 35, and is therefore void: Focht v. Lebanon, 4 Dauphin County 12; Stockdale v. School Dist., 47 Mich. 226 (10 N. W. Repr. 349); Whitney v. Hudson Village, 69 Mich. 189 (37 N. W. Repr. 184).

*Lee C. Beatty,* with him *C. A. O'Brien,* for appellee.— The ordinance repealing the ordinance opening Black street was a valid exercise of the powers conferred upon the city of Pittsburgh: Franklin street, 14 Pa. Superior Ct. 403; Moravian Seminary v. Bethlehem Borough, 153 Pa. 583; Myers v. South Bethlehem Boro., 149 Pa. 85; Sensening v. Lancaster County, 30 Pa. Superior Ct., 224.

The city made no entry upon the property such as precludes it from withdrawing from the opening pro-

ceeding: Uhler v. Cowen, 199 Pa. 316; Franklin Street, 14 Pa. Superior Ct. 403.

Councils violated no statutory provisions in the passage of the repealing ordinance: Harrisburg v. Gas Company, 219 Pa. 76; Pennsylvania R. R. Co. v. Pittsburgh, 221 Pa. 90.

OPINION BY MR. JUSTICE BROWN, May 13, 1912:

The ordinance assailed by the appellants is not for the vacation of Black street. It merely repeals the ordinance of July 13, 1908, directing the opening of that street, which for many years had been a located, but unopened, highway of the city of Pittsburgh on what was known as the "East Liberty Plan." The ordinance of April 15, 1910, repealing the opening ordinance, was passed in pursuance of the provisions of the Act of May 16, 1891, P. L. 75, and all of the objections to the validity of its passage are clearly and correctly answered in the opinion of the learned judge of the court below refusing to vacate the order quashing the proceedings before the board of viewers.

The contention that the repealing ordinance is not effective as to the property belonging to the estate of Catherine R. Negley, deceased, because, at the time it was passed, the city had entered upon that property and treated Black street as one of its highways, involves a question of fact which the court below found adversely to the appellants. The finding is as follows: "In the improvement, the grading and curbing and paving of streets, which cross the line of the located Black street, turnouts were made in the paved streets at places where they crossed the located Black street. But on none of these streets did the city go beyond the line of the cross street which it was improving. It could not be said to have entered upon Black street, because, although there is a turnout which indicated that there was or was to be a street at each of these places yet the entire improvement at this place was within the line of

the several cross streets which it was improving at the time. It would be an undue stretching of the situation to say that this was an entry upon Black street and treating that as a public highway by the city." This finding has not been assigned as error, and we cannot, therefore, disturb it; but, even if it had been so assigned, we could not overrule it, for the testimony of J. S. Fullerton, called as a witness by the appellants, was sufficient to sustain it. On cross-examination, he testified as follows: "Q. Outside of Boreland street, which is shown on this plan, none of the curbs extend into the part covered by Black street? A. They extend to the property line, yes sir. Q. They don't extend beyond the line of the cross streets which are shown upon the plan? A. No, sir; the location is within a tenth or so. Q. At the end of Boreland street you say the curb is extended into Black street? A. Yes, sir. Q. And that is the only one of these streets where the street improvements extend to any extent whatsoever upon the property covered by what is known as Black street? A. Yes, sir."

Both assignments of error are dismissed and the order of the court below is affirmed, at appellants' costs.